# Illinois Official Reports

## Appellate Court

---

### *People v. Shreffler*, 2015 IL App (4th) 130718

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN J. SHREFFLER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0718 |
| Filed | August 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Piatt County, No. 12-CF-15; the Hon. Richard L. Broch, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Tonya Joy Reedy (argued), all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Dana Rhoades, State's Attorney, of Monticello (Patrick Delfino, David J. Robinson, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Harris and Holder White concurred in the judgment and opinion.

## OPINION

¶ 1    In August 2013, following a stipulated bench trial, the trial court found defendant, Stephen J. Shreffler, guilty of three counts of unlawful use of weapons (UUW) in violation of section 24-1(a)(7)(ii) of the Criminal Code of 1961 (Code) (720 ILCS 5/24-1(a)(7)(ii) (West 2010)). Specifically, the State alleged, and the court found, that defendant possessed three illegal guns: (1) two shotguns, each with an overall length less than 26 inches; and (2) one rifle with a barrel less than 16 inches in length. The court sentenced defendant to 24 months of probation and 180 days in jail.

¶ 2    Defendant appeals, arguing that the State failed to prove him guilty beyond a reasonable doubt because (1) the "overall length" of the shotguns should have been measured by the length of a straight line between the two farthest points on the gun, instead of by the length of a straight line parallel to the bore, and (2) a flash suppressor at the end of the rifle's barrel should have been included in the measurement of the rifle barrel's length. Defendant also contends that section 24-1(a)(7)(ii) of the Code (1) is unconstitutionally vague and (2) violates the second amendment right to keep arms (U.S. Const., amend. II). Because we agree that the stipulated evidence failed to prove defendant guilty of the charged offenses, we reverse his convictions and sentence without addressing his constitutional claims.

¶ 3                              I. BACKGROUND

¶ 4    The following pertinent facts are largely undisputed.

¶ 5    In March 2011, federal agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) executed a search warrant on defendant's home in Monticello, Illinois. The agents suspected defendant of selling firearms without a license based upon information defendant posted on a website he maintained. During the search, ATF agents confiscated more than 40 firearms, many of which defendant kept displayed on the walls throughout his house. Among those guns were the two shotguns and the rifle at issue in this case. Federal authorities declined to prosecute defendant, and the case was turned over to the local State's Attorney.

¶ 6    In October 2012, the State charged defendant with violating section 24-1(a)(7)(ii) of the Code in that he possessed two "Companhia Brasileria de Cartuchos 12 gauge single shot shotgun[s]," each with an overall length of less than 26 inches. In December 2012, the State charged defendant with violating that same statute in that he possessed a "Palmetto AR-15 rifle" with a barrel less than 16 inches in length.

¶ 7    At an August 2013 bench trial, the parties presented the following evidence by stipulation. (Defendant did *not* stipulate that this evidence was sufficient to convict.)

¶ 8     In defendant's home, ATF special agent Dennis Fritzsche found an "AR-15 type rifle" and "two weapons made from shotguns," which he sent to the ATF Firearms Technology Branch in Martinsburg, West Virginia, for testing and measurement. (Fritzsche apparently characterized the shotguns as "weapons made from shotguns" because the stocks of the guns "had been cut down." For purposes of this appeal, we simply refer to the guns as the "rifle" and the "shotguns.")

¶ 9     Earl Griffith of the ATF Firearms Technology Branch in Martinsburg measured the three guns recovered from defendant's home. He found that the rifle had a barrel length of $11^5/_8$ inches. That measurement did not include the flash suppressor at the end of the barrel. If the flash suppressor had been included in the measurement, the barrel of the rifle would have exceeded 16 inches. According to the stipulation, Griffith would have testified that "a screw on, screw off flash suppressor is an attachment and is not considered part of the barrel of a rifle and is not included in the measurement of the barrel."

¶ 10    Pursuant to ATF regulations, Griffith measured the two shotguns along a straight line parallel to the bore (the bore is the interior portion of the barrel through which the projectile travels). By that measurement, Griffith found that one of defendant's shotguns measured $25^1/_4$ inches in overall length and the other shotgun measured $25^3/_8$ inches in overall length. If Griffith had measured a straight line from the tip of the barrel to the tip of the stock (not parallel to the bore), both shotguns would have exceeded 26 inches in overall length. Griffith would have testified that "the measurement methods he used for the rifle barrel and the overall length of the two weapons made from shotguns are the generally accepted measurement methods for ATF and the firearm industry and those methods of measurement are set forth in [27 C.F.R. § 479.11]." The trial court admitted the following diagram into evidence as part of the parties' stipulation:



¶ 11 The above diagram depicts two methods for measuring the overall length of a shotgun. The ATF's regulations approve of the method depicted on the right of the diagram, in which the overall length is measured from a straight line parallel to the bore. See 27 C.F.R. § 497.11. The method depicted on the left of the diagram (which ATF does not approve, as indicated by the large "X" through the image) determines the overall length by measuring a straight line between the two farthest points on the gun, which will usually be the tip of the barrel to the tip of the stock.

¶ 12 The trial court found defendant guilty of all three counts of UUW. Later in August 2013, the court sentenced defendant to 24 months of probation and 180 days in jail.

¶ 13 This appeal followed.

¶ 14                                   II. ANALYSIS

¶ 15 Defendant argues that the State failed to prove him guilty beyond a reasonable doubt because (1) the overall length of the shotguns should have been measured by the length of a straight line between the two farthest points on the gun, instead of the length of a straight line parallel to the bore, and (2) a flash suppressor at the end of the rifle's barrel should have been included in the measurement of the rifle barrel's length. Because we agree with these contentions, we need not address defendant's additional claims that section 24-1(a)(7)(ii) of the Code is unconstitutionally vague and violates the second amendment right to keep arms.

¶ 16                              A. The Standard of Review

¶ 17 Typically, when a defendant claims that the evidence presented at trial was insufficient to sustain his conviction, "a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *People v. Gonzalez*, 239 Ill. 2d 471, 478, 942 N.E.2d 1246, 1250 (2011). In this case, however, the facts–specifically, the physical dimensions of defendant's guns–are not in dispute. Instead, the only question is which of those dimensions matter for purposes of section 24-1(a)(7)(ii) of the Code. Because this is a question of statutory interpretation, our review is *de novo*. *People v. Giraud*, 2012 IL 113116, ¶ 6, 980 N.E.2d 1107.

¶ 18 "When construing a statute, the primary objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary language of the statute." *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15, 28 N.E.3d 747.

¶ 19                          B. Section 24-1(a)(7)(ii) of the Code

¶ 20 Section 24-1(a)(7)(ii) of the Code provides, in pertinent part, as follows:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

                                          * * *

(7) Sells, manufactures, purchases, possesses or carries:

                                          ***

(ii) any rifle having one or more barrels less than 16 inches in length *** or any weapon made from a *** shotgun, whether by alteration, modification, or

otherwise, if such a weapon as modified has an overall length of less than 26 inches[.]" 720 ILCS 5/24-1(a)(7)(ii) (West 2010).

C. The Shotguns

The State contends that the legal measure of a shotgun's "overall length" under section 24-1(a)(7)(ii) of the Code is not the farthest distance between two points on the shotgun. Instead, the State asserts that the "overall length" must be measured from a straight line parallel to the bore of the shotgun. We reject this contention, which runs contrary to the plain and ordinary meaning of the term "overall length."

The State correctly points out that the ATF's regulations state that the overall length of a shotgun should be measured from a line parallel to the bore. However, as defendant also correctly points out, the Illinois General Assembly could have provided for such a method of measurement in the text of section 24-1(a)(7)(ii) of the Code if it deemed that method necessary to effectuate the purpose of the statute. It did not. "Courts may not depart from the plain language of a statute by reading into it exceptions, conditions, or limitations that the legislature did not express." *Skaperdas*, 2015 IL 117021, ¶ 15, 28 N.E.3d 747.

Because "overall length" is not defined in the statute, we give that term its plain and ordinary meaning. "When the statute contains undefined terms, it is entirely appropriate to employ a dictionary to ascertain the plain and ordinary meaning of those terms." *People v. Davison*, 233 Ill. 2d 30, 40, 906 N.E.2d 545, 551 (2009). "Length" is defined as "the longer or longest dimension of an object." Merriam-Webster's Collegiate Dictionary 664 (10th ed. 2000). "Overall" is defined as "from one end to the other." Merriam-Webster's Collegiate Dictionary 826 (10th ed. 2000). The plain and ordinary meaning of the statutory terms simply provides no support for the State's assertion that the line of measurement must be restricted to a line parallel with the shotgun's bore. Instead, from one end to the other, the longer or longest dimension of a shotgun is a straight line between the farthest two points on the gun, not necessarily the length of a line parallel to the bore.

Because the undisputed evidence showed that both of defendant's shotguns had an overall length of more than 26 inches, as measured by a straight line between the farthest two points on the guns, the State failed to prove defendant guilty of violating section 24-1(a)(7)(ii) of the Code for possessing shotguns shorter than 26 inches in overall length. Accordingly, we reverse defendant's convictions.

D. The Rifle

The trial court found defendant guilty of possessing a rifle with a barrel less than 16 inches. It is undisputed that if the measurement of the rifle barrel had included the flash suppressor that was attached to the end of the barrel when the gun was seized from defendant's home, the length of the barrel would have exceeded 16 inches.

The State contends that the legal length of a rifle barrel under section 24-1(a)(7)(ii) of the Code does not include a flash suppressor attached to the end of the barrel. Illinois law does not specifically define the term "barrel" as used in section 24-1(a)(7)(ii) of the Code. "Barrel" is defined as "the part of a gun that the bullets go through when the gun is fired." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/barrel (last visited

July 1, 2015). It is undisputed that a bullet fired from defendant's rifle would have traveled through the flash suppressor.

¶ 29 However, the dictionary definition of "barrel" leaves some remaining ambiguity because it defines the barrel as "part of" the gun. Should we consider a flash suppressor "part of" the gun such that it fits within the definition of "barrel"? We conclude we should for two reasons.

¶ 30 First, "[p]ursuant to the rule of lenity, ambiguous criminal statutes will generally be construed in the defendant's favor." *People v. Gutman*, 2011 IL 110338, ¶ 12, 959 N.E.2d 621. "A statute is ambiguous if it is subject to more than one reasonable interpretation." *Skaperdas*, 2015 IL 117021, ¶ 16, 28 N.E.3d 747. Neither defendant nor the State has advanced unreasonable interpretations of the meaning of "barrel." However, our law dictates that the tie should be resolved in defendant's favor.

¶ 31 Second, the State has cited no provision of Illinois law from which this court may conclude that a flash suppressor–which undisputedly serves a functional purpose–is not part of a gun *simply because* it can be unscrewed and removed from the other parts of the gun. The General Assembly has certainly not drawn such a distinction. Were this court to adopt that distinction and incorporate it into section 24-1(a)(7)(ii) of the Code, our doing so would simply add uncertainty and ambiguity to the statute. Almost every gun can be disassembled into multiple component parts. How many parts must be unfastened and removed before the remaining parts are no longer a gun? Most shotguns, for instance, can fire with the stock removed. Yet even the ATF agrees that the stock is included in the "overall length" of a shotgun. It is the role of the legislature–not this court–to resolve such philosophical questions. Until and unless the General Assembly sees fit to promulgate more specific statutory definitions, we will construe the statutory ambiguity in defendant's favor.

¶ 32 The State does cite federal case law and regulations holding that a flash suppressor is not part of the barrel of a rifle under federal law. However, because those cases and regulations do not purport to interpret the Illinois statute at issue in this case, we are not bound to follow them.

¶ 33 Further, it is worth mentioning that the State presented no evidence that defendant ever removed the flash suppressor at any point during his ownership of the rifle. Although the trial court deemed the testimony irrelevant, the court allowed defendant to submit an affidavit as an offer of proof in which defendant stated the following:

"As to the AR-15 rifle, the same was purchased in March of 1991 and was never modified by defendant. It was in the same condition at time of seizure as it was at time of purchase including the attached flash suppressor. Defendant truly believed and continues to believe that the flash suppressor was an integral part of the barrel thereby rendering a measurement of 16 inches or more to the same."

¶ 34 To be clear, we do not mean to suggest that anything at the end of a rifle barrel must be included in the measurement for purposes of section 24-1(a)(7)(ii) of the Code. It is not as if someone may tape a chopstick to the end of a gun and call it part of the barrel for purposes of the statute. But in a case such as this, in which the flash suppressor is a functional component of the gun through which the bullet passes when the gun is fired, and the State presents no evidence that the defendant has possessed the gun without the flash suppressor attached, the law must be construed in defendant's favor.

¶ 35 We conclude that the attached flash suppressor in this case should have been included as part of the "barrel" of defendant's rifle. Accordingly, the barrel of defendant's rifle exceeded

16 inches in length, and his conviction under section 24-1(a)(7)(ii) of the Code must be reversed.

¶ 36    We also note that because the evidence presented at trial was insufficient to sustain defendant's convictions, double jeopardy prohibits a retrial. See *People v. Lopez*, 229 Ill. 2d 322, 367, 892 N.E.2d 1047, 1073 (2008) ("The State cannot retry a defendant once it has been determined that the evidence introduced at trial was insufficient to sustain a conviction.").

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, we reverse defendant's convictions and sentences.

¶ 39    Reversed.