2026 IL App (2d) 250133-U
No. 2-25-0133
Order filed June 24, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

JACOB R. GUTIERREZ-RODRIGUEZ, Defendant-Appellant

Appeal from the Circuit Court of Kane County.
Honorable John A. Barsanti, Judge, Presiding.
No. 23-CF-599

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion when it found sufficient safeguards of reliability to admit recording of child victim's pretrial statements and sufficient evidence proved defendant guilty beyond a reasonable doubt; affirmed.

¶ 2    Following a bench trial, defendant, Jacob R. Gutierrez-Rodriguez was found guilty of four counts of predatory criminal sexual assault of a child (PCSA) (720 ILCS 5/11-1.4(a)(1) (West 2022)), and two counts of aggravated criminal sexual abuse (ACSAb) (*id*. § 11-1.6(c)(1)(i)). The victim of these offenses was C.V., defendant's minor stepdaughter. The trial court sentenced defendant to an aggregate 27-year term of imprisonment.

¶ 3    On appeal, defendant contends that the evidence was insufficient to support any of his convictions and that the trial court erred when it found sufficient safeguards of reliability to admit

a recording of C.V.'s pretrial statements pursuant to section 115-10 of the Code of Criminal Procedure (Code) (725 ILCS 5/115-10 (West 2022)). We reject both contentions and affirm.

¶ 4                                    I. BACKGROUND

¶ 5       After C.V. made an outcry statement to a DCFS agency caseworker, and sat for a forensic interview, in March 2023, the State charged defendant with 31 sexual offenses against C.V. Many of the charges were repetitive, or "bare bones" as the trial court put it, which is why the court ultimately directed out 25 of the charges at the close of the State's case at trial. Relevant here, the counts that remained were four PCSA and two ACSAb counts. Those charges alleged that between January 1, 2018, and March 1, 2023, defendant touched C.V.'s vagina with his penis (counts 1-3), that he touched her anus with his penis (count 6), and that he both touched her breasts (count 22) and kissed her for the purposes of sexual arousal (count 27).

¶ 6       Prior to trial, the State filed a motion to admit the recording of C.V.'s March 17, 2023, interview at the Kane County Child Advocacy Center (CAC). At the time of the interview, C.V. was 11 years old and in fifth grade. At a hearing on the motion, Kane County State's Attorney's Office investigator David Smith testified that he was a trained child forensic interviewer and had been assigned to the CAC for roughly six years. Smith estimated that he had conducted around 300 child interviews in that capacity. The court then reviewed a recording of Smith's interview with C.V., which was just over 40 minutes.

¶ 7       At argument on the motion, the defense asserted that C.V.'s statements were not reliable because of Smith's initial instructions to C.V., because she stated that she remembered defendant touching her when she was one, and because she used different terms to refer to her anus and vagina at the beginning of the interview than she used later on in the interview. With respect to

Smith's instructions, the defense took issue with Smith telling C.V. "[e]verything we say here is true[,] "what we say in this room actually happened[,]" and "tell me the next time it happened[.]" The defense argued that Smith's statement could be taken to validate any statement C.V. made in the interview, even a false one, because she had said it in the CAC interview room, and that his statement regarding the "next time it happened" suggested she describe an event that may not have occurred. The State asserted that the recording's time, content, and circumstances all provided sufficient safeguards of reliability. The State further pointed out that C.V. would be available for cross-examination, that any inconsistencies went to weight not admissibility, and that C.V. had no motive to fabricate her claims.

¶ 8    The trial court found Smith's initial instruction to be "confusing" and "jarring," but that while he asked "some leading questions," there "weren't a lot of [them]." The court initially stated that there were "*some* safeguards as to the [*sic*] reliability." The court found that C.V.'s credibility was ultimately a question for the trier of fact, stating, "I am asked to give whether there is [*sic*] sufficient safeguards that they are reliable. I think that is. [*sic*] For this purpose of this hearing [*sic*], I do find that to be the case so that would be admissible."

¶ 9    Defendant's bench trial occurred in October 2024. The State called 11 witnesses. We summarize the relevant testimony. At trial, C.V. testified to several incidents of sexual assault and sexual abuse, all occurring while she was 10 or 11 years old. These incidents took place in various rooms in the family home and in defendant's car.

¶ 10    Violeta Lopez, a caseworker with One Hope United, a DCFS contract agency in Kane County, testified that she had been assigned to an intact-family case involving C.V.'s family. Lopez testified that she received several concerning text messages from C.V., indicating that she had been sexually abused by defendant. In response to one of Lopez's questions, C.V. stated that she

believed she was the only child defendant sexually abused in the household and not her half-siblings.

¶ 11    A registered nurse testified that she assisted with the performance of C.V.'s sexual assault evaluation at an area hospital. Prior to the examination, according to the nurse, C.V. "endorsed that there was kissing down there." A nurse practitioner who also participated in the examination testified that no abnormalities were discovered. The witness explained that, because of the resiliency of human tissue, the results did not indicate whether sexual abuse had or had not occurred. Results from DNA sample taken from C.V.'s bra provided what one analyst described as "strong support" that defendant contributed to the DNA found on that item of clothing.

¶ 12    The State also entered stipulations regarding data extraction performed on defendant's cellphone. Defendant tendered his phone to the Elgin police department at 9:11 p.m. on March 29, 2023. Subsequent analysis revealed that the device had undergone a "factory reset" at 7:56 p.m., prior to defendant turning it over. Investigator Smith also testified regarding C.V.'s interview at the CAC, which was admitted into evidence. Finally, the State successfully introduced evidence showing that defendant was born on August 4, 1989.

¶ 13    After the State rested, the trial court entered directed findings on most of the charged offenses as noted. The court expressed its displeasure with how the State had charged the case, as many of the charges "mirror[ed]" each other and were not "differentiated." Afterwards, the defense rested without presenting evidence, and the parties proceeded with closing arguments. Subsequently, the court entered a written judgment finding defendant guilty of four counts of PCSA and two counts of ACSAb. Defendant's post-trial motion was denied and the court sentenced him to six years' imprisonment on each of the four PCSA counts, and three years' imprisonment

on each of the two ACSAb counts, which was an aggregate 31-year term with mandatory consecutive sentencing. Defendant appealed.

¶ 14                              II. ANALYSIS

¶ 15    Before this court, defendant contends (1) that the State's evidence was insufficient to sustain any of his convictions and (2) that the trial court erred by admitting the recording of C.V.'s interview at the CAC into evidence under 725 ILCS 5/115-10. To assess the sufficiency of the evidence, we must first determine whether a key piece of evidence was properly admitted, so we will address the recording first.

¶ 16    With respect to the recording, we must address a threshold issue of forfeiture. In order to preserve an evidentiary issue for appellate review, the defense must (1) make a contemporaneous objection at trial and (2) raise the *specific* issue in a post-trial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); see also 725 ILCS 5/116-1(c) (West 2022) ("[t]he motion for a new trial shall specify the grounds therefor"). Where the evidentiary issue is the subject of a pre-trial motion filed by the State, the defense's pre-trial opposition to the motion *in limine* may take the place of a trial objection, but the issue must still be raised again, with specificity, in a post-trial motion. *People v. Denson*, 2014 IL 116231, ¶¶ 18, 24.

¶ 17    The defense opposed the State's pre-trial motion *in limine* and, at trial, defense counsel did offer a contemporaneous objection when the State moved to admit the CAC video, so the first step in preserving that claim was sufficiently taken. *Id*. The problem here is that this issue was *not specifically* raised in defendant's post-trial motion, leaving the second step incomplete. Defendant's appellate brief asserts that this issue was preserved by his post-trial motion, but the motion only says that "the [trial] [c]ourt erred in admitting evidence over the [d]efendant's objection." That is far too vague and imprecise to highlight the section 115-10 issue for the trial

- 5 -

court's post-trial review. A post-trial motion must set forth the claim of error with "adequate specificity" (*People v. Buckner*, 121 Ill. App. 3d 391, 396 (1984)) so that the trial court judge may consider the issue, in the appropriate context, and determine if a new trial is warranted. At the hearing on the motion for new trial, defense counsel and the court both referred to the CAC interview but did so exclusively in the context of discussing whether defendant's convictions could be sustained *solely* based on C.V.'s statements in the interview in the event the trial court accepted the defense's argument and disregarded her trial testimony. Nothing was ever mentioned regarding the recording's exclusion or its admissibility. Consequently, we are hard pressed to say that a post-trial motion that failed to call the trial court's attention to the piece of evidence that defendant claims should not have been admitted (*e.g.*, State's Exhibit #1, the videorecording of the CAC interview), and failed to mention the relevant statutory authority (*e.g.*, 725 ILCS 5/115-10), and failed to set forth any particular claim regarding its admissibility (*e.g.*, that there were not sufficient safeguards of reliability, etc.) raised this issue post-trial at all. The trial court was thus denied "the opportunity to review the same essential claim" below (*People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009)) that defendant seeks to assert here.

¶ 18    Now, on appeal, defendant ignores the motion's inadequacy and, worse, fails to raise this forfeited issue as plain error. For its part, the State fails to address defendant's forfeiture at all. The State treats the claim as if it was preserved, and in the alternative argues that any error was harmless. In other words, defendant has forfeited the issue, and the State has forfeited its ability to raise defendant's forfeiture in this direct appeal. *People v. Lucas*, 231 Ill. 2d 169, 175 (2008). The State's misstep, while significant, is trivial by comparison though, and not just because the defendant is the appellant. We have repeatedly criticized the use of generic language in post-trial motions in criminal cases because it derogates the whole of the appellate review process. It

deprives the State of a post-trial opportunity to respond in the trial court, then it deprives the trial court judge of a fair opportunity to consider the claim of error after trial, and then it deprives us of the benefit of considering the State's argument as well as the trial court judge's post-trial insight or analysis. If a claim of error is significant enough to be raised here as the basis for overturning a criminal conviction, then it is significant enough to be raised below *with specificity* in front of the judge who allegedly committed the error. That was not done here. See, *e.g.*, *People v. Hauck*, 2022 IL App (2d) 191111, ¶ 33 ("an objection must specifically identify the grounds for the objection and *** boilerplate language cannot be used as a catch-all to preserve issues for appeal"); *In re Commitment of Hooker*, 2012 IL App (2d) 101007, ¶ 53 ("[u]nless they are obvious from the record, the grounds for an objection must be specifically stated in order to preserve an issue for appeal"); *People v. Bock*, 357 Ill. App. 3d 160, 170 (2005) ("[g]eneral objections which do not inform the trial court of the basis for the claims of error made on appeal do not preserve the unspecified claims for review"); see also *People v. Reichert*, 2023 IL App (5th) 180537, ¶¶ 116-17 (concluding that the general objection to an officer's testimony "as a whole" did not include the more specific objections of relevance and unfair prejudice he raised on appeal and were therefore forfeited and constituted a procedural default).

¶ 19    The proper course is for us to set aside the State's forfeiture and, while we could find defendant's section 115-10 claim forfeited and move on (see *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (noting under such circumstances that defendant's "procedural default will be honored")), because the issue is simple and in the interest of reaching a complete result, we will review defendant's claim under the rubric of plain error, the first step of which is to determine whether there was any error in the first place. See *id.* The trial court has broad discretion to admit evidence

at trial, and we review its decision to admit evidence under section 115-10 of the Code for an abuse of discretion. *People v. Butler*, 2025 IL 130988, ¶ 31. Having done so, we find no error.

¶ 20   Defendant's primary argument is that the trial court used a "flawed analysis" to admit the recording because it said at one point that there were "*some* safeguards of reliability," which according to defendant is less than what the statute requires. See 725 ILCS 5/115-10(b)(1) (stating that, for admission, after a hearing, the court must find "that the time, content, and circumstances of the statement provide sufficient safeguards of reliability" to be admitted). We reject this attempt to make a mountain out of a molehill.

¶ 21   First, there was considerably more substance to the court's section 115-10 findings than defendant has claimed, and seizing on the use (or misuse) of a single word inside of an otherwise thorough ruling is hardly persuasive. The court's remarks after the hearing occupy two full transcribed pages in the record, and later the court *did* use the key adjective found in section 115-10 of the Code—*i.e.*, "sufficient"—when it found that the time, content, and circumstances of C.V.'s interview provided "sufficient safeguards that [her statements] are reliable." See generally *Ohio v. Roberts*, 448 U.S. 56, 66 (1980) (holding that an out-of-court statement is "admissible only if it bears adequate indicia of reliability"), *abrogated on other grounds in Crawford v. Washington*, 541 U.S. 36 (2004). Thus, and contrary to defendant's suggestion, we are satisfied that the trial court employed the appropriate legal framework and not some "flawed analysis."

¶ 22   What is more, we agree with the trial court that the time, content, and circumstances of the interview indicate that C.V.'s statements were reliable. Defendant's claims regarding the investigator's instructions, C.V.'s terminology, and some of C.V.'s statements (such as her belief that defendant had been abusing her since her infancy) simply are not availing. These assertions are wholly belied by the tone and tenor of the interview itself. When the State seeks to admit such

out-of-court statements, it has the burden to show that the prior statements were reliable, meaning that they were not the product of adult suggestion or coaching. *People v. Zwart*, 151 Ill. 2d 37, 43 (1992). C.V.'s interview, whether considered in pieces or as a whole, unquestionably met that burden. We have carefully reviewed the recording, and do not find it to be unusual or suspect. And, contrary to the trial court's statement, we do not find Investigator Smith's initial phrasing regarding the need to speak truthfully to have been confusing or alarming. What Smith meant was clearly understandable in context and, more importantly, appeared to have been clearly understood by C.V. during the interview itself.

¶ 23 Further, we find unconvincing defendant's point about C.V.'s use of "changing" terminology to refer to parts of her body and defendant's body. All of the terms C.V. used, both in the interview and at trial—such as "private places," "front part," "back part," "peepee," "poopy," and "booty"—were certainly age appropriate. C.V. manifested no apparent difficulty in understanding Smith's instructions and questions, and she gave detailed, focused, and coherent responses to each of Smith's questions. While Smith did prompt C.V. in the sense that he asked her questions, C.V.'s responses were not suggested by the questions Smith asked. Her answers also did not appear to have been rehearsed and they contained many significant details regarding the offenses. Simply stated, even if defendant had not forfeited this issue, the trial court did not abuse its discretion when it determined that the time, content, and circumstances of C.V.'s recorded statements were sufficiently reliable to be admitted at trial pursuant to section 115-10 of the Code.

¶ 24 We next address the sufficiency of the evidence. When a reviewing court is presented with a challenge to the sufficiency of the evidence, it should not retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Instead, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009).

¶ 25 The offense of PCSA requires proof of an act of "sexual penetration" by a person 17 years or older (as defendant was) against a victim who is under 13 years of age (as C.V. was). 720 ILCS 5/11-1.40(a)(1). Sexual penetration includes "any contact, however slight" between the sex organ of one person and the sex organ (or anus) of another person, or "any intrusion, however slight" of any part of the body of one person into the sex organ (or anus) of another person. *Id.* § 11-0.1. Meanwhile, the offense of ACSAb requires proof of an act of "sexual conduct" by a person 17 years or older against a victim who is under 13 years of age. *Id.* § 11-1.6(c)(1)(i). " 'Sexual conduct' means any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organ, anus, or breast of the victim or the accused *** for the purpose of sexual gratification or arousal of the victim or the accused." *Id.* § 11-0.1.

¶ 26 Defendant does not dispute the age element of any of the offenses, as he would have been in his early through mid-30s during the time of the charged offenses. Instead, defendant asserts that C.V.'s testimony and recorded statements were so "fraught with inconsistencies and contradictions" as to render her wholly unworthy of belief. For example, defendant finds fault with C.V.'s testimony because she was unable to remember the color of the stripes on the pillow defendant told her to scream into during incidents of penetration in the living room. Defendant further points out the police did not seize the couch or test it for DNA, despite the fact that C.V. described an incident where "white stuff" came out of defendant's "front part" and he tried to wipe

it off the sofa. In addition, although C.V.'s statements indicated that the last incident of assault was roughly a year before it was reported to the police, defendant notes that no corroborating evidence was found during C.V.'s medical examination nor was his DNA found on her body or clothing. These points are all unpersuasive.

¶ 27     As our supreme court has stated, under similar circumstances:

> "We cannot accept this challenge to the sufficiency of the evidence. It remains the firm holding of this court that the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant. When considering a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. Rather, in a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. A reviewing court will not reverse a conviction simply because the evidence is contradictory or because the defendant claims that a witness was not credible." (Citations omitted.) *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

Defendant's claims regarding perceived inconsistencies in C.V.'s testimony, like his attempt to cast doubt on the State's failure to obtain items of questionable evidentiary value, are drastically overstated. We have reviewed the record and have determined that C.V.'s statements and testimony, which the trial court found credible, were sufficient to establish defendant's guilt beyond a reasonable doubt. Three of the PCSA counts charged defendant with sex-organ-to-sex-organ contact and one charged him with sex-organ-to-anus contact. C.V. described multiple separate incidents in which defendant touched her vagina with his penis, including at least once in his car (when he took her to his job), once in her bedroom, once in the living room, and once in the kitchen.

C.V. also described a time where defendant tried to penetrate her anus with his penis in the dining room. Further, C.V. described defendant having touched her breast and kissing her on the lips, as charged in the ACSAb counts.

¶ 28 In order to sustain convictions on such charges, the victim must describe the kind of act or acts committed with sufficient specificity, the number of acts, and the general time period in which the acts occurred. *People v. Letcher*, 386 Ill. App. 3d 327, 334 (2008). Additional details about time, place or circumstances of each incident may assist in determining credibility, but "are not essential to sustain a conviction." *Id*. We have previously held that testimony similar to C.V.'s may sustain convictions for multiple sex offenses, and defendant does not argue against that principle here. See *id*.; *People v. Avendano*, 2023 IL App (2d) 220176, ¶ 53.

¶ 29 Here, in its written judgment, the trial court highlighted aspects of C.V.'s testimony that it found credible including transcribed portions of her testimony as well as her description of the position of her body during anal penetration; that defendant placed a pillow over her mouth to prevent others from hearing her scream; C.V.'s description of defendant's ejaculation; details and locations of when the incidents occurred; and defendant's threats if she did not acquiesce. C.V.'s delayed disclosure of defendant's abuse is also unremarkable. See *In re M.G.*, 2024 IL App (1st) 232106, ¶ 29 (recognizing fear, shame, and guilt as motives to remain silent about sexual abuse in families); *People v. Duplessis*, 248 Ill. App. 3d 195, 199-200 (1993) ("In sexual assault cases involving family relationships, the victim's credibility is not lessened if there is no immediate outcry."). In sum, C.V.'s testimony was positive and certain. The trial court found her credible, and while it is not our province to reweigh the evidence, we see absolutely no reasonable basis to disturb the trial court's carefully considered and detailed factual findings. See *Siguenza-Brito*, 235 Ill. 2d 213 at 243.

¶ 30                          III. CONCLUSION

¶ 31    For the reasons stated, we reject defendant's contentions and affirm the judgment of the circuit court of Kane County.

¶ 32    Affirmed.