2026 IL App (2d) 240781-U
No. 2-24-0781
Order filed February 10, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. JOSE JUAREZ-HERNANDEZ, Defendant-Appellant.

Appeal from the Circuit Court of Kendall County.
Honorable Robert P. Pilmer, Judge, Presiding.
No. 20-CF-364

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence was sufficient to establish defendant's guilt beyond a reasonable doubt, and defendant was not prejudiced by the introduction of other-crimes evidence or evidence of the victim's outcry to his sister.

¶ 2    Following a bench trial before the circuit court of Kendall County, defendant, Jose Juarez-Hernandez, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)) and four counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)) stemming from seven discrete charged acts committed against the victim, E.A. On appeal, defendant challenges the sufficiency of the evidence supporting his convictions and contends the trial court erred in allowing the introduction of other-crimes evidence and in admitting hearsay testimony evidence of E.A.'s outcry to his sister, A.G. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     E.A. was born in November 2003.  The conduct alleged in the 11-count indictment occurred from November 2008 to November 2014.  The timeframe of the indictment began on E.A.'s fifth birthday and ended the day before his eleventh birthday.  The evidence admitted at trial, however, involved conduct that occurred while E.A. was between 5 and 13 years of age.  At the time of trial, E.A. was 20 years old.

¶ 5     From 2008 to 2021, when he was between 5 and 18 years old, E.A. lived in his mother's house in Plano with his mother, grandmother, A.G., a brother and two uncles.  E.A. first met defendant, who was his mother's boyfriend,  when he was three years old.  When E.A. was seven or eight, defendant moved into his mother's home.

¶ 6     E.A. testified that defendant began abusing him beginning when he was five years old and ending when he was around 13 years old because he finally developed the strength and understanding to defend himself.  During at least a part of this time, defendant was also inappropriately touching A.G.  Specifically, when E.A. was seven years old in October 2011, defendant rubbed A.G.'s vagina through her clothes.  E.A. and A.G.'s mother did not believe A.G.'s report of the abuse; nevertheless, after being charged in Kendall County case No. 12-CF-16 for the aggravated criminal sexual abuse (720 ILCS 5/11-1.60(b) (West 2012)) of A.G., defendant moved out of the home.  Although he no longer resided in the home, defendant still visited and stayed overnight when A.G. was not present.  In 2013, A.G. moved out of the house and moved permanently to Mexico.  In October 2018, defendant was convicted and received a 36-month term of probation.  E.A. did not disclose that defendant was abusing him, even after A.G. had made her charges of abuse, because he was frightened of defendant and his mother disbelieved A.G.  It was not until 2020 when E.A. first disclosed defendant's conduct—to his therapist.  E.A. explained that, before his disclosure to his therapist, he did not feel safe discussing what defendant did to him.  Thereafter, E.A. reported the conduct to the police, and this action was initiated.

¶ 7     E.A. testified that, defendant first abused him when he was five years old. E.A. was recovering from having his appendix removed and was home alone with defendant. The two were in the living room sitting next to each other, and defendant began to tickle E.A. At first, nothing inappropriate occurred, but defendant had E.A. stand, unzipped his own pants, and then took down E.A.'s pants. Defendant then placed E.A. on his lap atop his penis. Defendant's penis did not go inside of E.A.

¶ 8     When E.A. was between the ages of 8 and 10, defendant engaged in three distinct types of abuse: defendant would place a finger in E.A.'s anus, would insert a toothpick in E.A.'s anus, and would touch E.A.'s penis with his hand. As described by E.A., defendant engaged in a single type of abuse during each episode of abuse. Defendant abused E.A. primarily in E.A.'s mother's bedroom, although some episodes occurred in the living room.

¶ 9     E.A. described that the finger-in-anus contacts generally took place in E.A.'s mother's bedroom while they were alone. Defendant was seated next to E.A. while E.A. was standing, or defendant placed E.A. on the bed. Defendant then pulled E.A.'s pants and underwear down. Defendant next placed his hand on E.A.'s back, rubbing down to his buttocks, and finally touched E.A.'s anus with his finger. The finger-in-anus contacts occurred multiple times during the period.

¶ 10    E.A. also testified that, when he was between the ages of 8 and 10, defendant inserted a toothpick into his anus a few times. The toothpick contacts also occurred when defendant and E.A. were alone in E.A.'s mother's bedroom and followed a similar pattern as the finger-in-anus contacts: defendant pulled down E.A.'s pants and underwear, rubbed E.A.'s back and buttocks, and then inserted the toothpick into E.A.'s anus. E.A. knew it was a toothpick because he saw that defendant had a toothpick in his mouth and felt something sharp poke his anus.

¶ 11    E.A. described that the penis touching occurred between the ages of 8 and 10 when he and defendant were alone in the house. As with the other types of abuse, the penis touching generally

occurred in E.A.'s mother's bedroom and followed the same format: defendant pulled down E.A.'s pants and underwear, rubbed E.A., and used his hand to touch E.A.'s penis.

¶ 12    E.A. testified that, one time during the 8-10 age range, defendant bit him on the buttocks with his mouth.  The biting contact occurred in his mother's bedroom when no one else was present.  Defendant had disrobed E.A. and had been touching him.  E.A. tried to crawl away, but defendant caught his legs, pulled him back, and bit his buttocks.

¶ 13    E.A. also testified defendant continued to abuse him after age 10.  Specifically, defendant engaged in finger-in-anus contacts, toothpick-in-anus contacts, and penis-touching contacts.  E.A. elaborated that, after age 10, some finger-in-anus contacts occurred on a couch in his mother's bedroom, in addition to on her bed.  As with the previous contacts, the contacts occurring after age 10 occurred only when E.A. and defendant were alone together.

¶ 14    When E.A. reached 13 years of age, the abuse ceased.  E.A. testified that, during the final episode, he verbally objected and walked out of the room.

¶ 15    Reflecting on the entire period of abuse, E.A. stated that defendant touched him when he was between 5 and 13 years of age.  When defendant lived in the home with E.A., the abuse could occur on any day of the week at any time during the day when defendant was alone with him.  After defendant had moved out of the home, the abuse occurred when defendant was visiting or staying overnight, only, however, when A.G. was not present.

¶ 16    On cross-examination, E.A. testified that his biological father lived in Montgomery, not with him or in his mother's house.  His mother and biological father were never married, and E.A. regularly visited him on weekends.  However, in 2014, E.A.'s biological father "left the picture."

¶ 17    E.A. again noted that he first met defendant when he was three years old.  E.A. recalled that, when he was between the ages of five and eight, defendant lived in an apartment in Aurora.

In 2011, defendant moved into his mother's home. E.A. recalled that he had reported this to the investigator who interviewed him about his allegations against defendant.

¶ 18    Concerning his victim-sensitive interview, E.A. told the interviewers that he did not recall whether his pants had been pulled down during the very first incident of defendant's abuse; yet E.A. admitted on cross-examination that he had just testified that his pants were down during that incident. E.A. also did not remember telling the investigators that the abuse mostly happened when he was five years old.

¶ 19    E.A. described the layout of his mother's house. His bedroom and his mother's bedroom were to the left of the entry to the house, and his grandmother's bedroom was to the right. He shared his bedroom with one of his sisters. His two uncles occupied the basement.

¶ 20    E.A. testified that, from 2008 to 2011, his mother worked the second shift at Caterpillar, from around 3 p.m. to midnight. E.A. did not recall whether defendant was employed from 2008 to 2011, and he testified on cross-examination that defendant would typically abuse him after 3 p.m. on weekdays, after his mother had left for work and before his siblings returned from school. A.G. would generally look after him once she returned from school, and sometimes, his brother or grandmother would caretake. If they were unavailable, defendant looked after E.A.

¶ 21    Late in 2011 or early in 2012, A.G. accused defendant of touching her inappropriately. Defendant was then arrested and he moved out of the home. Because E.A.'s mother did not believe A.G., she maintained contact with defendant, and he would visit his mother when A.G. was not present. Thus, E.A. would see defendant on the weekends and occasionally during the week. A.G. continued to reside in the house until 2013, when she moved to Mexico. E.A. testified on cross-examination that, even after defendant moved out of the house, he continued his abuse of E.A., and the instances of abuse generally occurred in the living room.

¶ 22    E.A. did not mention anything about his sexual abuse to A.G. while that abuse was ongoing. In 2014, E.A. was 11 years old when defendant was initially tried for abusing A.G.[1] E.A. did not remember testifying in that trial, but he did write a letter on defendant's behalf. E.A. maintained that, despite writing the supportive letter, defendant continued to abuse him. E.A. noted that, at the time he wrote the letter, his mother and defendant continued to date despite the trial.

¶ 23    Defendant questioned E.A. about his 2020 victim-sensitive interview. Specifically, E.A. stated to the interviewer that he did not make an outcry when the police were investigating A.G.'s allegations because defendant "hadn't done it to me yet."[2] E.A. did not know whether his statement to the interviewer was accurate.

¶ 24    The trial court ruled on the State's pending motions *in limine* seeking to admit other-crimes evidence. The court allowed A.G. to testify about defendant's conduct relating to case No. 12-CF-16.

¶ 25    A.G. testified that, at the time of the trial, she was 27 years old; E.A. was her brother, and they enjoyed a close relationship. In 2013, A.G. moved to Mexico and currently resided there. In 2011, she lived in her mother's home in Plano along with E.A., her mother, her grandmother, her

---

[1]The result of defendant's first trial for the abuse of A.G. was reversed. *People v. Hernandez*, 2017 IL App (2d) 150027-U. In 2019, defendant was retried and convicted in case No. 12-CF-16, and we affirmed his conviction in *People v. Hernandez*, No. 2-18-0833 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

[2]The interviewer clarified with E.A., "when [E.A.] was four or five, [he] witnessed the stuff [defendant] did, molestation to [his] sister, but at that time," E.A. made no outcry. E.A. responded, "because [defendant] hadn't done it to me, he hadn't done it to me yet."

uncle, another brother, and defendant. On October 14, 2011, defendant touched her while she and defendant were alone in her mother's bedroom. A.G. explained that defendant did not remove her clothing, but he placed his hand between her thighs and touched her vagina over her clothes. A.G. recalled that there were others present in the home. A short time after the incident, defendant was criminally charged. A.G. continued to live in the Plano home with her mother and E.A. until 2013. During that time, there were instances when she was not present in the house because she was at school or with friends, but E.A. remained in the home. According to A.G., around October 2011, defendant moved out of the home. Nevertheless, her mother continued dating defendant until 2020.

¶ 26  On cross-examination, A.G. testified that she was 7 years older than E.A., and when she was 12, she was one of E.A.'s primary care givers. A.G.'s grandmother lived in the home at the time defendant abused A.G. A.G. agreed that her grandmother had "kind of" of a supervisory role over her and E.A. Once A.G. moved to Mexico, other family members let her know that defendant continued to visit and, on weekends and sometimes during the week, defendant would stay overnight.

¶ 27  On cross-examination, A.G. was questioned about whether E.A. shared with her his allegations that defendant abused him. She replied that he had and, specifically, when questioned whether E.A. shared that defendant had E.A. touch his penis, A.G. replied, "yes."

¶ 28  On redirect examination, A.G. described her relationship with her mother as difficult, and her mother did not believe the abuse allegations against defendant. A.G. related that E.A. first reached out to her about defendant abusing him via text, then a phone conversation, then an in-person conversation. During the phone conversation, A.G. explained to E.A. "the definition of rape and he told me that that was what had happened to him." Defendant objected, and the objection was overruled. A.G. elaborated, stating that E.A. told her that defendant "had put his

finger in him, put a toothpick in him, made [E.A.] touch [defendant's] penis, and tried to put his penis inside of [E.A.]" A.G. further noted that E.A. talked about the abuse in general statements and that it had lasted from when he was between the ages of 5 and 13.

¶ 29 Following A.G.'s testimony, the State rested. The parties stipulated that defendant's birth date was February 21, 1955. In defendant's case-in-chief, defendant presented excerpts from the interview between E.A. and Kendall County investigators. The first excerpts concerned how E.A. described the difference between defendant tickling him and defendant tickling A.G.: "At first it was normal, but then he did a bunch of stuff that I'll get to later. But it's hard to tell when I was five because I was five. I mean, I could give you one, he mostly did it when I was five."

¶ 30 The second excerpt concerned the initial instance of abuse:

"He unzipped his zipper and he tried to place me on his, you know.

***

On his, you know, penis. I felt it. But the thing I don't remember is if my pants were down or not. But I do recall feeling it because he placed me on it and I immediately got up and turned to face him."

¶ 31 Defendant presented his third excerpt: the interviewer asked E.A. why he did not tell anyone, when he as four or five, that defendant was molesting him when defendant was also molesting his sister. E.A. responded, "Because he hadn't done it to me then. He hadn't—didn't do it to me yet."

¶ 32 Defendant's fourth excerpt consisted of two statements: the interviewer asked E.A. to identify the ways defendant had inappropriately touched him, and E.A. stated, "I already told you one, standing by the chair. On the bed—on the bed is when he did toothpick, fingered, he bit my ass. That's what happened." The interview eventually asked E.A. to identify what happened when

he was standing next to defendant, and E.A. stated, "Slapping my ass, also attempting to touch my penis both here. The fingering and the toothpick, that was only on the bed."

¶ 33    Similarly, the fifth and final excerpt also consisted of two statements. E.A.'s first statement was prompted by the interviewer's request for clarification about what was occurring "[b]etween eight and ten."[3] E.A. responded, "Yeah. As I got older, I got the usual standing at the couch. After like eleven and twelve, it was never the bed anymore." The interviewer continued, asking "what was it when you were eleven or twelve?" E.A. responded, "Standing on the couch."

¶ 34    The State objected that the fourth and fifth excerpts were not impeaching. The record does not clearly show whether the trial court expressly ruled on the objections and whether it considered the excerpts as impeachment evidence.

¶ 35    Defendant moved for a directed finding, and the trial court denied defendant's motion. The parties proceeded to closing arguments, and the court took the matter under advisement.

¶ 36    On April 23, 2024, the trial court pronounced its judgment:

> "[The] Court's had an opportunity to consider the testimony that was presented [by] the witnesses, [E.A.] and [A.G.]
>
> [The] Court finds [that,] as the witnesses testified [the] Court had an opportunity to make observations or observe them, make determinations as to their credibility, based on their demeanor during their testimony and direct examination as well as cross-examination.
>
> [The] Court also had an opportunity to review the victim sensitive interview of [E.A.] that was done in this matter.

---

[3]The excerpted question and answer apparently referred to E.A.'s description of the contact defendant made when E.A. was between 8 and 10 years old. The entirety of the exchange was not presented to the trial court.

Without reciting all of the evidence that was presented there and issues on the cross-examination, [the] Court does find that the State has proven beyond a reasonable doubt the elements of each of the offenses charged in Counts—

Count 1 is the offense of predatory criminal sexual assault of a child, as is Count 2.

***

Count 5 is the offense of aggravated criminal sexual abuse.

Count 7, the offense of aggravated criminal sexual abuse.

Count 9, the offense of aggravated criminal sexual abuse.

And Count 11, also the offense of aggravated criminal sexual abuse.

As the State has proven those necessary elements of each of those offenses, the Court will find [defendant] guilty of those offenses.

As to the offenses charged in Counts [3], 4, 6, 8, [and] 10, as was discussed at the outset of the trial, those are similar to other charges, but these were charged with the additional allegation that the defendant was a family member.

And based on the testimony at trial, [the] Court finds that this element was not proven beyond a reasonable doubt. And so, I'm [going to] find the defendant not guilty of those [five] offenses."[4]

---

[4]While pronouncing its judgment, the trial court mistakenly included count III in its findings of guilt notwithstanding that count III alleged that the conduct was committed by a family member. When defendant asked for clarification, the court realized it had spoken in error and expressly noted that defendant was not guilty of the offense charged in count III, and the court reiterated that defendant was found guilty of the offenses charged in counts I, II, V, VII, IX, and XI.

¶ 37 Defendant timely filed a motion for a new trial which was denied. Defendant received consecutive seven-year sentences for counts I and II, and concurrent three-year terms for counts V, VII, IX, and XI, but served consecutively to the terms in counts I and II, for an aggregate term of 17 years. Defendant timely filed a motion to reconsider his sentence which, on December 23, 2024, was denied. Defendant timely appeals.

¶ 38                                II. ANALYSIS

¶ 39 On appeal, defendant challenges the sufficiency of the evidence and the admission of certain evidence. Specifically, defendant argues that the evidence was insufficient to support his conviction because E.A.'s testimony was improbable, vague, and inconsistent, and his credibility as a witness was thoroughly impeached. Defendant also argues that the trial court erred by admitting other-crimes evidence because it failed to balance the probative value of the evidence against its prejudicial effect, as required by section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2024)), and Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011). Defendant also contends that the court erred by allowing A.G. to testify about E.A.'s outcry to her because it was inadmissible hearsay.

¶ 40                        A. Sufficiency of the Evidence

¶ 41 Defendant argues that the evidence adduced at trial was insufficient to support his guilt beyond a reasonable doubt. We review a challenge to the sufficiency of the evidence by considering whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22. This standard of review applies to all criminal cases regardless of the nature of the evidence—direct or circumstantial. *Id.* It also gives proper deference to the trier of fact's responsibility to resolve the conflicts in the testimony presented, to

weigh the evidence, and to draw reasonable inferences. *Id.* Thus, in our review of the evidence, we will not retry the defendant or substitute our judgment for that of the trier of fact. *Id.*

¶ 42    With that said, we also are not simply a rubber stamp for the trier of fact's assessment. While we accord deference to the trier of fact's decision, its determination is neither conclusive nor binding. *People v. Wheeler*, 226, Ill. 2d 92, 115 (2007). We will not hesitate to reverse where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.*

¶ 43    Defendant argues that the evidence was insufficient to sustain any of his convictions. We disagree.

¶ 44    Defendant was convicted of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)) in counts I and II. To sustain a conviction for predatory criminal sexual assault of a child, the State must prove beyond a reasonable doubt that (1) the defendant was 17 years of age or older, (2) the defendant committed an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for (a) the purpose of sexual gratification or arousal of the victim or the defendant, or (b) an act of sexual penetration, and (3) the victim is under 13 years of age. *Id.*

¶ 45    Regarding count I, E.A. testified on direct examination that, when he was between the ages of 8 and 10, defendant would pull down his pants, touch his buttocks, and place his finger into his anus. E.A. testified that episodes of abuse usually occurred in his mother's bedroom, but some also occurred in the living room. From this testimony, a rational trier of fact could find the essential elements of the offense of predatory criminal sexual assault of a child beyond a reasonable doubt.

¶ 46    First, it is uncontested that defendant was 17 years of age or older and E.A. was under 13 years of age when any of the contacts testified to occurred. Next, E.A. testified that defendant pulled down his pants as E.A. was standing next to him and touched him on the buttocks before

placing his finger into E.A.'s anus. Specifically, E.A. testified that defendant "would start at [his] back and go lower and he would basically get down there" before finally placing his finger in contact with E.A.'s anus. Whether an action was committed for the purpose of sexual gratification or arousal is typically inferred from the evidence. *In re M.G.*, 2024 IL App (1st) 232106, ¶ 31. Circumstantial evidence includes things like observable signs of arousal, placing the victim's hand on the defendant's genitals, removal of the victim's clothing, and the like. *Id.* E.A.'s testimony about defendant's conduct fully supports an inference that defendant was committing them for the purpose of his own sexual gratification or arousal. E.A. testified that defendant and he would be alone together in his mother's bedroom or in the living room. Defendant would take down E.A.'s pants and underwear, rub his back and buttocks, and culminate the conduct by placing his finger in E.A.'s anus.[5] Thus, we conclude the evidence is sufficient for a rational trier of fact to have found the essential elements of count I beyond a reasonable doubt.

¶ 47 Count II alleged the offense of predatory criminal sexual assault of a child where defendant used his hand to touch E.A.'s penis. E.A. specifically testified that, on multiple occasions in his mother's room, defendant touched E.A.'s penis with his hand. The attendant circumstances remained the same: defendant pulled down E.A.'s pants and underwear and rubbed his back and buttocks. This testimony, too, amply supports defendant's conviction of count II, and we conclude that the evidence is sufficient for a rational trier of fact to have found the essential elements of count II beyond a reasonable doubt.

---

[5]We note that defendant does not contest that the conduct testified to was committed for the purpose of sexual gratification or arousal; rather he argues that the testimony was improbable. Notwithstanding the forfeiture by failing to contest the issue, E.A.'s testimony supports the inference that defendant committed it for the purpose of his sexual gratification or arousal.

¶ 48    Counts V, VII, IX, and XI charged defendant with aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1) (West 2020)). To sustain a charge of aggravated criminal sexual abuse, the State must prove that (1) the defendant was over 17 years of age, and (2) the defendant committed an act of sexual conduct with a victim who was under 13 years of age. *Id.* "Sexual conduct" is defined as:

> "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused, or any part of the body of a child under 13 years of age, *** for the purpose of sexual gratification or arousal of the victim or the accused." *Id.* § 11-0.1.

Thus, sexual conduct involving a victim who is under 13 years of age requires the defendant to have intentionally touched or fondled " 'any part of the body,' in all cases for the purpose of sexual gratification or arousal of the victim or the [defendant]." *People v. Johanson*, 2024 IL 129425, ¶ 13 (quoting *People v. Nibbio*, 180 Ill. App. 3d 513, 517 (1989) (interpreting the former version of the statute mirroring the current version's definition of "sexual conduct").

¶ 49    Regarding count V, E.A. testified that, when he was five years old, he and defendant were alone together in the house, sitting in living room. Defendant began tickling E.A., at first in an appropriate manner, but "[t]hen it all went down from there." Defendant had E.A. stand up. Defendant unzipped his own pants, pulled down E.A.'s pants, and had E.A. sit on his penis. Defendant's penis did not go inside of E.A.

¶ 50    The ages of defendant and E.A. at the time of this conduct are not contested. The evidence further shows that defendant placed his penis in contact with E.A.'s buttocks when he had E.A. sit on his penis. That the evidence is unclear as to whether defendant's penis was inside or outside of his clothes, or whether E.A.'s buttocks was clothed or unclothed does not affect our conclusion because "sexual conduct" is defined as "any knowing touching or fondling by the victim or the

- 14 -

accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age" for the purpose of the defendant's or the victim's sexual gratification or arousal. 720 ILCS 5/11-0.1 (West 2020); *Johanson*, 2024 IL 129425, ¶ 13. Moreover, the element of the sexual gratification or arousal of defendant is demonstrated by the removal of E.A.'s clothes, the exposure of defendant's penis by unzipping his pants, and placing E.A. on defendant's penis. These facts lead to the reasonable inference that defendant performed the action for his own sexual gratification or arousal. See *M.G.*, 2024 IL App (1st) 232106, ¶ 31 (sexual gratification or arousal is usually proved through circumstantial evidence). Thus, we conclude that the evidence was sufficient to demonstrate the existence of the necessary elements of aggravated criminal sexual abuse, and a rational trier of fact could have found the elements of the offense beyond a reasonable doubt.

¶ 51    Regarding counts VII and IX, E.A. testified that, on multiple occasions, defendant would take down his pants and underwear and rub his back, then his buttocks, and would place his finger in E.A.'s anus or would touch E.A.'s penis. Because we have found E.A.'s testimony was sufficient to prove the contact element of predatory criminal sexual assault of a child, it is also sufficient to prove the sexual conduct element of aggravated criminal sexual abuse as charged in counts VII and IX. *Johanson*, 2024 IL 129425, ¶ 14. Moreover, this conduct satisfies the definition of "sexual conduct," because defendant knowingly touched or fondled "any part of the body of a child under 13 years of age *** for the purpose of [his own] sexual gratification or arousal." 720 ILCS 5/11-0.1 (West 2020). We conclude that a rational trier of fact could have found the elements of the offenses charged in count VII and IX beyond a reasonable doubt.

¶ 52    Regarding count XI, defendant was charged with using his mouth to touch E.A.'s buttocks. E.A. testified that, one time when he was between the ages of 8 and 10 years, he and defendant were alone together in his mother's room. Defendant had disrobed E.A. and his buttocks were

exposed. Defendant "was touching [E.A., who had] had enough of it so [E.A.] tried to crawl out and that's when [defendant] caught [E.A.'s] legs and bit [his] butt." The encounter as described was clearly for the purpose of defendant's sexual gratification or arousal, and his placing his mouth on E.A.'s buttocks was part of the encounter, and it leads to the inference that it was to continue his sexual gratification or arousal. Further, it satisfies the definition of "sexual conduct" as it involved the touching of "any part of the body of a child under 13 years of age *** for the purpose of [defendant's] sexual gratification or arousal." *Id.* Thus, we conclude that a rational trier of fact could find the essential elements of the offense charged in count XI beyond a reasonable doubt.

¶ 53    Defendant challenges his convictions of counts I, II, VII, IX, and XI because the offenses occurred after he had moved out of the Plano residence. These counts alleged that defendant's conduct occurred between November 16, 2011, and November 15, 2014, when E.A. was between 8 and 10 years of age. While defendant was living in the home for several years before he moved out, both E.A. and A.G. testified that he moved out of the home around October 2011. While defendant's contention is colorable, it is incomplete because it fails to acknowledge and account for E.A.'s testimony that defendant continued to visit and stay at the home when A.G. was not present, and this included weekends and occasions during the week. Clearly, despite no longer living in the home, defendant continued to have the opportunity to abuse E.A. Accordingly, we reject defendant's contention.

¶ 54    Defendant contends that it is improbable that, in a house as crowded as the Plano residence, the many other family members would have been oblivious to defendant's actions, especially given that A.G. had alleged that defendant had sexually abused her. We disagree.

¶ 55    On direct examination, E.A. testified that many of the events took place in his mother's room. On cross-examination, E.A. also testified that the events took place in the living room. Defendant infers that the cross-examination establishes that any of the alleged conduct occurred

only in the living room, but in making this inference, defendant completely ignores and discounts E.A.'s testimony on direct examination that, when he was between the ages of 8 and 10, the episodes of abuse occurred both in his mother's room and in the living room. Moreover, regardless of the location, E.A. invariably testified that he and defendant were alone together in the room when the abuse occurred. Despite any inconsistencies, E.A. invariably testified that an episode of abuse occurred only when he and defendant were alone together. Therefore, no other family members observed defendant's abuse of E.A., and E.A.'s silence about his abuse continued unabated during that time. Defendant does not explain how the other family members should have become aware of this abuse, particularly where E.A. was at pains to explain that, in each of the instances he described, he and defendant were alone together in the room in which it occurred. We can thus infer that defendant carefully made sure his actions remained secret. The deliberate seclusion of defendant and his victim along with defendant's efforts at concealing his actions explain why the family would not notice—particularly where E.A.'s mother was obviously disinclined to believe that defendant was sexually abusing any of her children. We therefore determine that, even though other family members lived in the house with E.A., it is not so improbable or unreasonable that they would not notice defendant's abuse E.A. as to raise a reasonable doubt.

¶ 56    Regardless, we further note that it is the role of the trier of fact to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. *McLaurin*, 2020 IL 124563, ¶ 22. The trial court observed the testimony during the trial and expressly noted that it considered all the evidence and assessed the witnesses' credibility considering both direct and cross-examinations. Defendant's contention that the family must have noticed amounts to little more than a request that we substitute our judgment for that of the court, as trier of fact, and this we may not do. *Id.*

¶ 57    Defendant maintains that it is implausible that none of the other family members saw or heard the abusive conduct during the three-year timeframe, particularly where, on cross-examination, E.A. noted that other family members may have been present in the home. We disagree. E.A. expressly testified that the abuse occurred only when he and defendant were alone together in the room, which expressly rebuts defendant's contention. Moreover, E.A. described that defendant had initially tickled him. In the first episode of abuse, that tickling turned into abuse. It is therefore a reasonable inference that defendant tickled E.A. as play, and, by tickling E.A., began grooming him for the abuse that was to come. A further inference arises: by tickling as play, the family members would have undoubtedly perceived this as normal and affectionate play between defendant—a father figure—and E.A.—the child defendant was parenting. E.A. also testified that defendant's conduct consisted of touching and rubbing; there was no violence, crying, raised voices, or the like during the episodes of abuse. Rather, E.A.'s testimony indicated that he became inured to it and experienced it as normal, because, as a young child, he knew no differently. Thus, there was little for the family to see or hear given that defendant abused E.A. only when they were alone together.

¶ 58    Similarly, defendant questions E.A.'s testimony that he experienced no abuse when he and defendant were outside of the home. Defendant argues that the lack of abuse outside of the home undermines E.A.'s credibility. We disagree. E.A. consistently testified that the episodes of abuse occurred when he and defendant were alone in a room together—defendant had no assurance of privacy or isolation if he were out of the house and in public. E.A.'s testimony is thus consistent with defendant's pattern of abuse: engage in sexually abusive conduct only in private when there is little or no risk of discovery. For defendant to have taken E.A. out in public and begun to engage in sexual abuse is contrary to his pattern as revealed in the evidence. Rather than undermining

E.A.'s credibility, this testimony reinforces the cautious and calculated nature of defendant's sexually abusive actions.  We reject defendant's contentions.

¶ 59    Defendant argues that E.A.'s credibility is "called into question" because E.A. did not disclose his abuse following A.G.'s report of abuse, and because he maintained a close relationship with defendant after the abuse ended.  Defendant further underscores the 2014 letter of support E.A. wrote for him in relation to case No. 12-CF-16 as diminishing his credibility.  We disagree. E.A. explained he did not disclose his own abuse because his mother disbelieved A.G.'s allegations and continued to be involved with defendant.  We note that, in 2020, when E.A. made his outcry, his mother had finally ended her relationship with defendant, and this sufficiently heartened E.A. to disclose his own abuse at defendant's hands.  Regarding the letter, we note that, in 2014, E.A., then 11 years old, was still being abused by defendant, and that abuse would continue for another 2 years.  E.A. also testified that he was afraid of defendant, and this, too, inhibited his outcry. Moreover, during the time that his mother was dating defendant, defendant was providing financial and material support to E.A. and his mother, buying them food, clothing, and other things.  We do not find E.A.'s explanations for the delay in making his outcry or his reasons for continuing his own relationship with defendant to be unreasonable or improbable given his mother's relationship with defendant, defendant's continued presence in the home, and defendant's financial and material support.  Considering E.A.'s explanation, his delay in disclosure, and his continued relationship with defendant do not significantly undermine his credibility.  Moreover, the trial court was in a better position to assess E.A.'s credibility than we, and we reject this invitation to substitute our determination for that of the trial court.  *McLaurin*, 2020 IL 124563, ¶ 22.

¶ 60    Defendant argues that E.A.'s testimony was vague and inconsistent.  Defendant contends that, other than regarding counts V and XI, E.A. did not testify about specific incidents, only vague amalgamations of types of conduct that occurred multiple times over the course of 2 years (ages

- 19 -

8-10) and 3 years (ages 10-13). Counts V and XI were, in E.A.'s description, singular events, with count V representing the initial instance of abuse, and count XI representing a singular and memorable event where defendant bit E.A.'s buttocks. The remaining counts covered "routine," recurring, and continual incidents of abuse. Contrary to defendant's contention, E.A. provided clear and positive evidence about each type of abuse he experienced. For finger-in-anus abuse, E.A. testified that he and defendant would be alone together. Defendant would take down E.A.'s pants and underwear, begin rubbing his back, proceed to his buttocks, and eventually place his finger (or a toothpick) in E.A.'s anus. There is nothing vague, beyond the precise dates, about this testimony. Likewise, for the hand-to-penis abuse, E.A. testified that he and defendant would be alone together. Defendant would take down E.A.'s pants and underwear, begin rubbing his back and buttocks, and then touch E.A.'s penis. Again, there is nothing vague about the description of the incident, only the lack of a precise date.

¶ 61    Defendant cites *People v. Letcher*, 386 Ill. App. 3d 327, 334-36 (2008), to illustrate the limit of permissible testimony about repeating and undifferentiated incidents of abuse. According to defendant, it is permissible for a witness to testify about types of abuse in order to support multiple convictions, but he characterizes the charges here as six discrete acts about which defendant provided only vague and undifferentiated testimony. We disagree. The testimony about counts V (the initial act of abuse) and count XI (biting-the-buttocks) were two definite and discrete acts, as charged and as E.A. testified. The remaining counts (counts I, II, VII, and IX) are charged as singular acts, but E.A.'s testimony made clear that defendant engaged in three types of conduct: first, where he placed his finger in E.A.'s anus, second (and much less frequently), where he placed a toothpick in E.A.'s anus, and third, where he touched E.A.'s penis with his hand. E.A. testified that an episode of abuse did not combine the types of abuse. For all the episodes of abuse, E.A. testified that each episode began in the same way: he and defendant would be alone together in a

room.  Defendant would then remove E.A.'s pants and underwear.  Next, defendant would proceed to rub E.A.'s back and buttocks, and defendant would eventually insert his finger or a toothpick into E.A.'s anus, or he would touch E.A.'s penis with his hand.  E.A. testified that the finger-in-anus and penis touching events occurred frequently, both when he was between 8 and 10 years of age, and when he was between 11 and 13 years of age.

¶ 62     *Letcher* held that clear testimony about various types of offenses despite being "too generic to show a specific number of offenses" could nevertheless support multiple convictions.  *Id.* at 335.  The court examined the record to ascertain whether any testimony could have covered the same events, and it held that the evidence supported six of eight counts.  *Id.* at 335-36.  Here, E.A. testified about the initial incident of abuse, and this testimony clearly supported count V.  E.A. also testified that the biting event was a singular event, and this testimony clearly supported count XI.  E.A. then moved on to the types of abuse: finger-in-anus, toothpick-in-anus, and hand touching penis.  For each type, E.A. testified that multiple episodes of abuse occurred.  We conclude that, while generic, E.A.'s testimony that each of the types of abuse occurred more than once is sufficiently clear and precise to support the convictions here: counts I and IX (buttocks) and counts II and VII (penis).  *Letcher* fully supports our conclusion.

¶ 63     Defendant contends that the inconsistencies about who was present in the home render E.A.'s testimony incredible.  We disagree.  We have noted that E.A. uniformly testified that he and defendant would be alone in a room together, regardless of the room and regardless of whether anyone else was present in the house, before an episode of abuse occurred.  While the presence of other family members in the house may have made it more difficult for defendant to conceal his abuse of E.A., the fact that, invariably, he would only abuse E.A. when they were alone together rebuts defendant's contention because it demonstrates defendant's care in concealing his actions.

¶ 64    Defendant also challenges the inconsistency between location of abuse, whether in E.A.'s mother's room or the living room, concluding that the inconsistency should be fatal to E.A.'s credibility. The fact that, on direct examination E.A. located the abuse as generally occurring in his mother's room, and on cross-examination, E.A. stated that the abuse occurred in the living room is not fatal to his credibility. First, we note that E.A. was clear that abuse occurred only when he and defendant were alone in a room together. Thus, the location is of less importance to E.A.'s account than the other consistent elements to which he testified. Second, we note that E.A. also testified that, after defendant moved out of the house, he continued to frequently visit—both on weekends and during the week. This provided ample opportunity for abuse to continue— defendant needed only to get E.A. by himself in a room. Additionally, we note that the trial court expressly considered all aspects of E.A.'s testimony, the direct examination, the cross-examination, and the victim sensitive interview; in addition, it expressly assessed his credibility, all of which was proper. Ultimately, the testimony in the record is not so unreasonable or improbable as to support a reasonable doubt. *McLaurin*, 2020 IL 124563, ¶ 22.

¶ 65    Defendant argues alternatively that we should reverse counts II and VII because they are particularly unsupported by the evidence. Defendant primarily advances the same general arguments as he advanced regarding the sufficiency of the evidence supporting all of the counts. In addition, however, defendant highlights that, on cross-examination, E.A. did not volunteer that defendant had touched his penis, and in the portion of the victim-sensitive interview offered as impeachment E.A. had stated only that defendant "attempt[ed] to touch" his penis. These additions to the argument add nothing substantive or persuasive to what defendant has presented above. Therefore, for the same reasons as above, we reject defendant's alternative contention. For all counts, and including counts II and VII, the evidence was sufficient for a rational trier of fact to find the essential elements of each offense beyond a reasonable doubt. *Id.*

¶ 66    As a final comment, we note that defendant does *not* argue that counts I, II, VII, IX, and XI should be reversed because they are based on testimony of events occurring outside of the timeframe specified in the indictment. The evidence shows that, sometime around October 2011, defendant moved out of the house, so the charges refer to conduct occurring after defendant had left the house, presumably diminishing his opportunities to engage in the abusive conduct. E.A. also testified on cross-examination that the abuse stopped occurring in his mother's room after defendant had moved out of the house. Defendant could, therefore, have tried to argue that the abuse that E.A. claimed occurred in his mother's room all preceded October 2011, because no abuse occurred in E.A.'s mother's room after he moved out. Defendant could have attempted to conclude that, because E.A. testified to abuse occurring in his mother's room, but no abuse occurred in his mother's room after defendant moved out of the house, E.A.'s testimony referred conduct occurring outside of the timeframe specified in the indictment thereby rendering the evidence insufficient to support his convictions entirely.

¶ 67    Such an argument, however, would be unavailing. First, it ignores E.A.'s direct testimony that, between the ages of 8 and 10 (the timeframe covered by counts I, II, VII, IX, and XI), episodes of abuse occurred more frequently in his mother's room, but also sometimes occurred in the living room. Second, as discussed above, defendant was still a regular and overnight visitor to the house, absenting himself from the household when A.G. was present. These visits gave him ample opportunity to perpetrate the charged abuse. Third, and perhaps most importantly, E.A. consistently testified that the abusive episodes occurred only if he and defendant were alone together in a room. Thus, while E.A.'s mother's room may have been better suited to provide the necessary privacy, the fact that they could also be alone together in the living room demonstrates that defendant could still have taken advantage of opportunities to abuse E.A. as they arose, even

after he had moved out of the house. For these reasons, such a claim, while perhaps colorable, would be unavailing.

¶ 68                           B. Other-Crimes Evidence

¶ 69    Defendant argues that the trial court erred in allowing E.A. to testify about abusive conduct occurring when he was between 11 and 13 years of age. Generally, the State may not introduce evidence of other crimes to demonstrate a defendant's propensity to act in conformity with those prior or other bad actions. Ill. R. Evid. 404(a) (eff. Jan. 1, 2011). In certain circumstances, like sexual crimes, other-crimes evidence may be admitted to prove a defendant's propensity for committing the charged offenses. Ill. R. Evid. 404(b). Section 115-7.3 of the Code (725 ILCS 5/115-7.3 (2024)) governs the admission of other-crimes evidence in prosecutions for, among other things, predatory criminal sexual assault of a child and aggravated criminal sexual assault. Such evidence may be admitted after the court has conducted a meaningful assessment of the probative value of the evidence versus its prejudicial effect. *Id.* § 115-7.3(c); *People v. Donoho*, 204 Ill. 2d 159, 186 (2003).

¶ 70    Defendant argues that, here, the trial court engaged in no assessment of probative value versus prejudicial effect. Defendant argues that this failure "made it impossible to determine whether the trial court found [defendant] guilty of crimes charged in the indictment or of the other-crimes evidence." We disagree.

¶ 71    In cases such as this, the trial court's failure to conduct a meaningful assessment on the record of whether the prejudicial effect of the other-crimes evidence substantially outweighs its probative value is not necessarily reversible error. *People v. Adams*, 2023 IL App (2d) 220061, ¶ 73. Rather, when considering whether the failure to balance the probative value of other-crimes evidence versus its prejudicial effect constitutes reversible error:

"we must first examine whether the trial court reasonably could have found that the probative value of the *** evidence to show defendant's criminal propensity was not substantially outweighed by its prejudicial effect. If we answer in the affirmative, then the trial court's failure to conduct a meaningful assessment would not render the ultimate admission of the *** evidence an abuse of discretion, *i.e.*, the failure to do an explicit balancing test would be harmless." *Id.* ¶ 77.

Section 115-7.3(c) provides that, when considering the probative value and prejudicial effect of other-crimes evidence, the trial court may consider: (1) the temporal proximity of the other-crimes evidence to the charged offense, (2) the factual similarity between the other-crimes evidence and the charged offense, and (3) any other relevant facts and circumstances. 725 ILCS 5/115-7.3(c) (West 2024).

¶ 72    Here, the other-crimes evidence encompassed conduct occurring when E.A. was between 10 and 13 years of age. His testimony about the charged offenses encompassed conduct occurring when E.A. was between 5 and 11 years of age, with the conduct of counts I, II, VI, IX, and XI occurring when E.A. was between 8 and 10 years of age. Obviously, during the trial, the State failed to limit the testimony about the uncharged conduct to when E.A. was between 11 and 13 years of age, so there is overlap for conduct that may have occurred between November 2013 and November 2014. Nevertheless, E.A. clearly testified that he was subjected to recurring, continual episodes of abuse when he was between the ages of 8 and 10 and when defendant was able to get them alone together. Turning to the factors of section 115-7.3(c), E.A.'s testimony established that the other-crimes evidence was substantially similar to the testimony concerning the charged offenses, notwithstanding the overlap. E.A. testified that, when he was between 8 and 10 years of age, defendant engaged in three types of conduct: he would abuse E.A. by placing his finger in E.A.'s anus, by placing a toothpick in E.A.'s anus, and by touching E.A.'s penis with his hand.

- 25 -

E.A. also testified that, when he was between 10 and 13 years of age, defendant engaged in the same three types of conduct: finger-in-anus, toothpick-in-anus, and hand-on-penis. For both, E.A. testified that defendant would initiate an incident in the same manner. Defendant would ascertain that he and E.A. were alone together in a room in the house, defendant would then pull down E.A.'s pants and underwear, and defendant would begin rubbing E.A.'s back and buttocks, before completing one of the three types of contact. The other-crimes conduct and the charged-offense conduct are therefore substantially similar, and both involved precisely the same victim, E.A.

¶ 73    Additionally, the other-crimes evidence occurred within three years of the charged offenses. Although the timeframe of the charged offenses was between November 2011 and November 2014 (when E.A. was between 8 and 10 years of age) and the timeframe of the other-crimes evidence was between November 2013 and November 2017 (when E.A. was between 10 and 13 years of age), E.A. clearly testified that the abuse defendant inflicted occurred when he was between 5 and 13 years of age, ending sometime when he was 13. E.A. testified that, throughout the entire timeframe of the abuse, defendant continually abused him, and that it could occur at any time of day and any day of the week, so long as defendant was able to be alone with E.A. in a room in the house. We hold that there is sufficient temporal proximity in this case. See *Adams*, 2023 IL App (2d) 220o61, ¶ 81 (the uncharged conduct occurred within about a year of the charged conduct); *Donoho*, 204 Ill. 2d at 186 (adequately temporally proximate where there were substantial factual similarities and the charged conduct occurred within 12 to 15 years of the other-crimes evidence).

¶ 74    Therefore, the trial court reasonably could have found that the probative value of the uncharged-conduct evidence to show defendant's criminal propensity was not substantially outweighed by its prejudicial effect. Thus, the admission of the other-crimes evidence is harmless

because its admission could not constitute an abuse of discretion. *Adams*, 2023 IL App (2d) 220061, ¶ 77. Because the error is harmless, defendant cannot sustain his claim on appeal.

¶ 75    Defendant complains that the overlap of other crimes evidence when E.A. was 10 years of age with evidence of the charged offenses when E.A. was 10 years of age means that whether the uncharged-conduct evidence contributed to or caused his convictions cannot be determined. We disagree. We note that E.A.'s testimony was clearly delineated into conduct occurring when he was between 8 and 10 years of age, and conduct occurring when he was between 10 and 13 years of age. The evidence of the charged conduct when E.A. was between 8 and 10 years of age, standing alone, is sufficient to sustain his convictions. Moreover, E.A. clearly testified that defendant's abuse was ongoing, recurring, and continual throughout the entire time spanning when he was between 5 and 13 years of age, ceasing only after E.A. asserted himself and walked out of an attempted episode of abuse. Accordingly, we reject defendant's argument.

¶ 76                                    C. Inadmissible Hearsay

¶ 77    Defendant contends that the trial court erred in allowing A.G.'s testimony during her redirect examination relating what E.A. told her defendant had done to him. Specifically, on cross-examination, defendant asked A.G. whether E.A. had told her about defendant's abuse of him, to which A.G. responded, "Yes." On redirect examination, the State asked A.G., "Do you recall exactly what he told you in the phone conversation?" A.G. responded that she "explained to him the definition of rape and he told me that that was what had happened to him." Defendant objected, and the court overruled the objection, noting that the answer would stand as given. A.G. then elaborated, testifying, "And he said that that was what had happened to him because [defendant] had put his finger in him, put a toothpick in him, made him touch his penis, and tried to put his penis inside of him." Defendant offered no further objection to this testimony. Additionally,

defendant concedes that the issue was not properly preserved because it was not included in his written posttrial motion but requests that we review the issue as first-prong plain error.

¶ 78     We need not fully evaluate the issue beyond determining whether the evidence in this case was closely balanced.  Under the plain-error doctrine, a reviewing court may consider unpreserved error under two circumstances: (1) where a clear or obvious error occurred and the evidence is so closely balanced the error alone threatened to tip the outcome of the case against the defendant, regardless of the seriousness of the error, or (2), a clear or obvious error occurred and the error was so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial system, regardless of the closeness of the evidence.  *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).  Defendant asks us to proceed under the first prong—closely balanced evidence.  Evidentiary errors do not implicate the second prong (see *People v. Thompson*, 238 Ill. 2d 598, 609 (2010) (second-prong plain error, or structural error, applies only to a limited class of cases including a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction), so this is the only avenue open to him.  For purposes of our analysis, we will assume that the admission of A.G.'s testimony on redirect examination constituted a clear or obvious error without deciding whether that is the case.

¶ 79     The evidence in this case is not closely balanced.  E.A. testified clearly and directly about defendant's conduct.  He testified that, when he was between 8 and 10 years of age, defendant would act only when they were alone together in a room in the house.  Defendant would then take down E.A.'s pants and underwear, rub his back and buttocks, and then either place his finger in E.A.'s anus, or touch E.A.'s penis.  These scenarios played out over the course of some eight years in total and were repeated multiple times.  There is nothing inherently improbable or unreasonable in the scenarios E.A. described.  E.A.'s testimony was not precisely consistent, but that is not

- 28 -

unexpected given that his victim-sensitive interview occurred some years after E.A. asserted the abuse had ceased, and some 12 years after the initial episode of abuse. Moreover, E.A.'s trial testimony occurred at an even greater remove, so it is understandable that his trial testimony was not precisely consistent with his victim-sensitive interview. Further, the trial court observed E.A.'s testimony and expressly took into consideration E.A.'s direct and cross-examinations and the effect of each on his credibility. Our review of the record confirms that E.A.'s testimony was neither unreasonable nor improbable and well within human experiences. Simply put, the evidence in this matter was not closely balanced.

¶ 80 Defendant maintains that E.A.'s testimony was vague and inconsistent. We have considered and rejected these contentions above. Because the evidence was not closely balanced, defendant cannot succeed in his claim of plain error, as any error would have had no effect on the outcome of his trial. Accordingly, we reject the contention.

¶ 81 Defendant alternatively contends that his attorney was ineffective for failing to preserve the hearsay testimony issue. In order to prevail on a claim of ineffective assistance, a defendant must show that the attorney's representation fell below an objective standard of reasonableness and the error resulted in prejudice. *People v. Patterson*, 2014 IL 115102, ¶ 81. Prejudice in this context means that there is a reasonable probability that, but for the unprofessional error, the result of the proceeding would have been different. *Id.* If no prejudice can be shown we may resolve a claim of ineffective assistance on that basis alone. *Id.*

¶ 82 As noted with respect to the plain error claim, defendant is unable to show that A.G.'s hearsay testimony influenced the result of the proceeding. Because defendant cannot show that the result of the proceeding would have been different, he cannot demonstrate any prejudice accruing from A.G.'s hearsay testimony. Accordingly, his claim of ineffective assistance necessarily fails. *Id.*

¶ 83                          III. CONCLUSION

¶ 84    For the foregoing reasons, we affirm the judgment of the circuit court of Kendall County.

¶ 85    Affirmed.